[752 NYS2d 626]

SAKELE BROTHERS, LLC, Appellant-Respondent, v ROBERTA SAFDIE, Respondent-Appellant.

First Department, December 19, 2002

### APPEARANCES OF COUNSEL

*Peter A. Mahler* of counsel (*David P. Gillett* on the brief; *Derfner & Mahler, LLP,* attorneys), for appellant-respondent.

*M. Teresa Daley* for respondent-appellant.

### OPINION OF THE COURT

Friedman, J.

This action concerns two adjoining commercial properties on the west side of Broadway in lower Manhattan. Plaintiff owns the two-story building at 187 Broadway. Defendant owns the five-story building at 183 Broadway, to the immediate south of 187 Broadway. The buildings share a party wall, which, as the record establishes, is situated directly over the boundary between the two properties. The three-story disparity in height between the buildings resulted from the demolition, years ago, of plaintiff's building above the second-story level. The issue presented by this appeal is whether the partial demolition of plaintiff's building gave defendant any right to exercise control over the exposed upper northerly face of the party wall, on plaintiff's side of the property line. We hold that, beyond an easement for the support of her own building, defendant has no such right.

The most recent agreement governing the party-wall relationship between the properties was executed in 1868. The 1868 agreement provided that the party wall was to be built so as to run directly over the property line, with a portion of the wall resting on each lot, and that each party would be entitled to use the wall for the support of his or her building. The 1868 agreement also provided, among other things:

"THIRD—Said wall when built shall remain and continue forever a party wall between the said two buildings, Numbers 183 and 187 Broadway. * * *

"EIGHTH—And it is further agreed that these presents shall not be considered as conveying any portion of the land now owned by either party, respectively, but only as creating an easement in the manner above described.

"NINTH—These presents shall bind the heirs and assigns of each party hereto and shall be considered as covenants running with the land."

The buildings were of similar height until 1979, when a fire occurred at 187 Broadway. Plaintiff addressed the fire damage to its building by razing the upper stories and repairing the surviving structure, leaving the two-story building that now exists. The party wall was left in place during this reconstruction. The result of 187 Broadway's reduction in height was the exposure of the upper northerly face of the party wall, which lies on 187 Broadway's side of the property line. It is undisputed that, as part of the 1979 reconstruction, plaintiff, at its own cost, resurfaced the exposed face of the party wall. Thereafter, and continuing until the commencement of the instant dispute in 1999, plaintiff maintained the exposed face of the party wall at its sole expense.

In May 1999, without plaintiff's knowledge or consent, an advertising company (Capital) erected a large, billboard-type advertising sign on the exposed northerly face of the party wall. Capital placed the sign on the wall pursuant to an agreement it had made with defendant, by which defendant purported to grant Capital an exclusive license to place advertising signs on the wall in consideration of the payment of monthly fees. Upon becoming aware of the sign, plaintiff promptly demanded its removal, asserting that the exposed wall was plaintiff's sole property. After defendant failed to honor plaintiff's repeated demands, plaintiff commenced this trespass action in March 2000.

The record establishes that, through August 2000, defendant received licensing fees of $35,750 for Capital's use of the party wall. In September 2000, the parties entered into an interim agreement, which provided, without prejudice to either party's claims and defenses in this litigation, that, pending resolution of this action, Capital could continue to place advertising signs on the party wall pursuant to its license agreement with defen-

dant, with all fees to be paid into an escrow account. The interim agreement further provided that funds would be disbursed from the escrow account only as authorized in writing by counsel for both parties or as directed by court order. Since September 2000, Capital has paid the licensing fees for its use of the party wall into the aforementioned escrow account.

As relevant to this appeal, plaintiff's first and second causes of action seek to compel the removal of any signs placed on the party wall under color of defendant's authority; to permanently enjoin defendant from causing any further signs to be placed on the party wall; and to recover damages for the alleged trespass to plaintiff's property. Defendant answered, asserting affirmative defenses that claimed that the subject wall is no longer a party wall and that plaintiff's "easement" in the wall was extinguished by the destruction of the upper stories of 187 Broadway in 1979. Defendant also asserted a first counterclaim[1] seeking the issuance of a declaratory judgment to the same effect as her affirmative defenses, and further declaring that defendant is entitled to enter plaintiff's property to "remove" the remaining portion of the wall or, in the alternative, "to use the wall as and when she desires."

After discovery was completed, plaintiff moved for partial summary judgment dismissing defendant's first counterclaim and affirmative defenses, granting plaintiff judgment on its first two causes of action, permanently enjoining defendant's use of the northerly face of the party wall, granting plaintiff recovery of the $35,750 defendant had collected from Capital up to August 2000, and directing the release to plaintiff of the funds paid into the escrow account since September 2000. In support, plaintiff submitted an affidavit and a certified survey map by a licensed surveyor, attesting, based on a survey conducted on November 28, 2000, that the northerly face of the party wall extends onto plaintiff's property from 14 inches to approximately two feet over the property line, depending upon the point along the length of the wall where the measurement is made.

Defendant cross-moved for summary judgment on her first counterclaim for a declaration that the wall had ceased to be a

---

1. We note that, although defendant purported to cross-move for summary judgment on both of her counterclaims, the second counterclaim (concerning an alleged encroachment on defendant's property by a sign on the front of plaintiff's building) was not substantively addressed by either party's motion papers or by the IAS court. We therefore have no occasion to address the second counterclaim in deciding this appeal.

party wall after plaintiff's building was destroyed above the second-story level in 1979, and that defendant is entitled, pursuant to RPAPL 881, to enter upon plaintiff's property "for the purpose of demolishing, removing, and/or repairing any portion of the wall which forms the basis of this litigation and to permit [defendant] to otherwise improve and/or repair her property." Defendant submitted the affidavit of a licensed architect, who criticized the surveyor's affidavit and map plaintiff had submitted on the ground that such material set forth measurements taken at ground level only, while the allegedly trespassing sign was posted above the roof of plaintiff's two-story building. The architect also asserted that there was no proof that the existing wall was the same wall referenced in the 1868 agreement. Defendant did not, however, submit any survey of her own.

In support of the branch of defendant's first counterclaim and cross motion seeking a declaration that defendant is entitled to enter upon plaintiff's property to demolish or repair the subject wall, defendant's architect opined, based on a visual inspection, that the wall was in such poor condition that it posed a danger to the buildings and needed to be rebuilt or repaired.

In reply, plaintiff submitted two additional surveyors' affidavits and a recertified survey map, attesting, based on additional measurements taken in the November 2000 survey, that the extension of the party wall onto plaintiff's property exists at various heights, including at the level of the advertising sign that was affixed to the wall on the date of the survey. Plaintiff did not address the issue of the condition of the party wall in its reply papers.

In its decision, the IAS court observed that it was "not seriously disputed that the wall straddles the building line [sic] separating the two properties, necessarily placing the signs at issue on plaintiff's property * * *." Nonetheless, the court ruled that the placement of signs on the exposed party wall was subject to the "joint consent" of both parties. The court granted plaintiff an injunction against defendant's use of the wall for advertising without plaintiff's consent, but stayed enforcement of the injunction until the expiration in 2004 of defendant's existing license agreement with Capital. Insofar as the motion and cross motion sought summary judgment on defendant's affirmative defenses and first counterclaim, both were denied, based on the court's view that the record was not sufficiently developed to resolve the issues presented.

With regard to monetary relief, the court, noting that plaintiff apparently "has never attempted to utilize the ex-

posed party wall commercially," and that defendant was "solely responsible for the acquisition of the controverted fund," concluded that "an equal division is the most equitable disposition of the fund." Accordingly, the court granted plaintiff recovery of $17,875, i.e., one half of the $35,750 of fees Capital paid defendant through August 2000, and recovery of one half of all funds paid by Capital into the escrow account pursuant to the September 2000 interim agreement, with payment of the latter deferred until after the expiration of Capital's license agreement. Both parties have appealed.

We begin our analysis by noting that the IAS court correctly found that there is no genuine dispute that the exposed northerly face of the wall, on which the advertising has been posted, is on plaintiff's side of the boundary line. Plaintiff's survey evidence to this effect is uncontradicted, defendant having submitted no survey evidence of her own. In view of this uncontradicted evidence, defendant's speculation that the present wall may not be the same one originally constructed pursuant to the 1868 agreement is irrelevant to the issues presented by this appeal.

In subjecting the use of the wall for advertising purposes to the parties' joint control, and in dividing the licensing fees paid for such use equally between the parties, the IAS court essentially treated the parties as if they were tenants in common, each holding an undivided one-half interest in the entire wall. This was error. Where a party wall runs directly over the boundary between the two parcels, in the absence of any agreement or statute providing otherwise, "[e]ach of the two adjoining owners * * * owns in severalty so much of the wall as stands upon his own lot, each having an easement in the other strip for purposes of the support of his own building" (*5 E. 73rd v 11 E. 73rd St. Corp.*, 16 Misc 2d 49, 52, *affd* 13 AD2d 764, citing, inter alia, *Partridge v Gilbert*, 15 NY 601, and *National Commercial Bank v Gray*, 24 NYS 997, *affd* 144 NY 701). Stated otherwise, "[a]lthough the land covered by [the] party wall remains the several property of the owner of each half, yet the title of each owner is qualified by the easement to which the other is entitled" (*5 E. 73rd v 11 E. 73rd St. Corp.*, *supra* at 52, citing *Brooks v Curtis*, 50 NY 639; *see also* 10 Warren's Weed, New York Real Property, Party Walls § 2, at 3 [4th ed]).

From the foregoing, it follows that the exposed northerly face of the wall is plaintiff's sole property, subject only to defendant's easement for the support of her building, and that defendant's

use of that wall space for advertising, a use wholly outside the scope of her easement, constitutes a trespass as a matter of law. The prerogative of using the exposed northerly side of the wall for advertising, or putting such wall space to any other use not interfering with defendant's easement, belongs entirely to plaintiff. This point is well illustrated by *Mileage Gas Corp. v Kushner* (245 App Div 836), in which Mileage Gas demolished its building on one side of a party wall running directly over the property boundary, and built on its lot a gas station with independent walls. Mileage Gas then sought to place a sign on its exposed side of the party wall, but Kushner, who owned the remaining building supported by the wall, objected. The Appellate Division, Second Department, granted Mileage Gas an injunction against Kushner's interference with the erection and maintenance of the sign, holding that "as long as [Kushner] maintains the wall for the benefit of its building, [Mileage Gas] has the right to the use of the westerly side of the wall, eight and one-half inches of which are on its property" (*id.*). In this case, conversely, plaintiff, the owner of the exposed side of the wall, is entitled to relief against the posting of signs on that portion of the wall by defendant, the owner of the adjoining building (*see also 5 E. 73rd v 11 E. 73rd St. Corp.*, *supra* [owner of building supported by party wall that ran directly over the property line had no right to cut window openings in the wall or to substitute glass brick for ordinary brick therein, notwithstanding that the other building formerly supported by the wall had been demolished]).

As the IAS court noted, it is true that a party wall, being "for the common benefit of contiguous proprietors," should not be subjected by either owner "to a use whereby it ceases to be continuously available for enjoyment by the other" (*25 W. 74th St., Corp. v Wenner*, 268 AD2d 387, 387-388, quoting *Varriale v Brooklyn Edison Co.*, 252 NY 222, 224). This principle means that neither owner may subject a party wall to a use for the benefit of its own property that renders the wall unavailable for similar use for the benefit of the other property. The principle does not, however, prevent one of the adjoining owners from using its own side of the party wall for its sole benefit where such use has no effect on the other owner's enjoyment of its separate property. Here, should plaintiff choose to place signs on the exposed northerly face of the wall, it is apparent that such use will neither interfere with defendant's easement in the wall for the support of her building nor otherwise limit defendant's enjoyment of her property. Accordingly, insofar as

the IAS court held that plaintiff is required to obtain defendant's consent before making any such use of the exposed wall, it erred.

As should be apparent from the foregoing, defendant's contentions, put forward in her affirmative defenses and her first counterclaim, that plaintiff's "easement" in the upper portion of the subject wall terminated upon the demolition of the upper stories of 187 Broadway in 1979, and that the wall ceased to be a party wall at that time, are completely misplaced in this action (see 5 E. 73rd v 11 E. 73rd St. Corp., 16 Misc 2d at 54). Plaintiff does not have an easement in the disputed upper north face of the wall. Rather, plaintiff owns outright that portion of the wall which stands on plaintiff's property, and it is defendant who holds an easement therein for the support of her own building. Accordingly, defendant's affirmative defenses should be dismissed.[2]

Having concluded that defendant trespassed on plaintiff's property, we turn to the question of remedy. We note that the proper measure of the damages for trespass is the gain the trespasser has derived from its wrongful conduct (see De Camp v Bullard, 159 NY 450, 454-455). The reason for this rule is that requiring a plaintiff to prove actual injury to recover more than nominal damages for trespass "would place a premium on trespassing" by "mak[ing] the position of the trespasser more favorable than that of one lawfully contracting" (id. at 454). Thus, the IAS court erred in granting plaintiff recovery of only one half of the licensing fees defendant has received from Capital, or would receive from Capital in the future, for the advertising unlawfully posted on plaintiff's property. Plaintiff is entitled to recover all the proceeds of defendant's misconduct, and it should have been granted summary judgment to that effect.

We further conclude that the injunction the IAS court granted plaintiff, forbidding defendant to use the wall for advertising without plaintiff's consent, should have been made enforceable immediately, rather than enforceable only upon the termination in 2004 of defendant's license agreement with Capital. Whether plaintiff wishes to attempt to improve upon the fees provided by the existing license agreement, to place its own sign on the wall, or simply to leave the wall blank, it is

---

**2.** Although defendant's first counterclaim is without merit to the extent it seeks declaratory judgment to the same effect as her affirmative defenses, another branch of the first counterclaim cannot be disposed of at this juncture, as discussed more fully below.

entitled to do so without further delay, given that defendant has not demonstrated the existence of any equitable considerations favoring a different result. Although the parties' interim agreement provides for the continuing performance of the license agreement pending determination of this action, plaintiff's execution of this agreement cannot be deemed to constitute consent to Capital's use of the wall for advertising after entry of judgment. In this regard, we note that the interim agreement expressly provides that its execution is "without prejudice to either [side's] claims, counterclaims and defenses * * *, all of which are hereby reserved," and further provides that it is not to be used by either party in the litigation "as an admission or concession of any nature whatsoever that either [defendant] or [plaintiff] does or does not have any right, legal, equitable or otherwise, to post and maintain the signs or any other material on the Party Wall * * *."

Finally, we address the branches of the motion and cross motion seeking summary judgment on defendant's first counterclaim to the extent it requests a declaration that defendant is entitled, purportedly pursuant to RPAPL 881, to enter upon plaintiff's property to demolish, repair or rebuild the party wall, based on the wall's allegedly poor condition. Although defendant's reliance on RPAPL 881 is misplaced,[3] we deem this prong of the first counterclaim to be based on the principle that a seriously deteriorated party wall may be torn down and rebuilt by either party, upon reasonable notice to the other (10 Warren's Weed, New York Real Property, Party Walls § 9, at 15 [4th ed]). The IAS court correctly denied summary judgment to either party on this issue, since defendant's submissions did not establish her entitlement to judgment as a matter of law, and plaintiff failed to submit any evidence at all on this matter.

Accordingly, the order and interlocutory judgment (one paper) of the Supreme Court, New York County (Louis York, J.), entered January 22, 2002, which, insofar as appealed from, (1) granted plaintiff partial summary judgment on its first and second causes of action, (2) permanently enjoined defendant, without plaintiff's consent, from using, and from authorizing others to use, for the display of advertisements, any portion of the subject party wall that lies on plaintiff's side of the prop-

---

**3.** RPAPL 881 provides for a special proceeding to obtain a license to enter another's real property to gain access to the petitioner's own real property for the purpose of making repairs or improvements, after such permission has been requested and denied.

erty line, with enforcement of such injunction stayed until the termination of a certain license agreement between defendant and Capital Advertising, Inc., dated as of January 1, 2000, (3) granted plaintiff recovery of defendant in the amount of $17,875, and further granted plaintiff recovery of an additional sum equal to one half of all fees, and interest thereon, paid pursuant to the aforesaid licensing agreement from September 2000 to the termination thereof, with execution on the latter amount to be had from monies deposited into escrow pursuant to a certain agreement between plaintiff and defendant dated September 2000, and with such execution to be deferred until after the termination of the aforesaid license agreement, (4) denied without prejudice defendant's cross motion for summary judgment on her first counterclaim and dismissing the complaint, and (5) declared that the joint consent of the parties is required for use of the subject party wall for advertising purposes, except as otherwise provided therein, should be modified, on the law, (1) to delete the portion of paragraph 4 of the order and interlocutory judgment that stays enforcement of the permanent injunction granted therein, (2) to delete paragraph 5 of the order and interlocutory judgment in its entirety and to substitute therefor a provision granting plaintiff recovery of defendant in the amount of $35,750, with interest from November 1, 1999, and further directing that all funds deposited into escrow pursuant to the aforesaid interim agreement between the parties, and all interest earned on such funds, be disbursed to plaintiff or its attorney forthwith, (3) to delete in its entirety paragraph 8 of the order and interlocutory judgment, declaring that the joint consent of the parties is required for use of the subject party wall for advertising purposes, (4) to grant plaintiff summary judgment dismissing defendant's affirmative defenses, (5) to provide that the denial of defendant's cross motion for summary judgment dismissing plaintiff's first and second causes of action is with prejudice, and (6) to sever plaintiff's first and second causes of action, and except as so modified, the order and interlocutory judgment (one paper) is otherwise affirmed, without costs.

WILLIAMS, P.J., ANDRIAS, LERNER and RUBIN, JJ., concur.

Order and interlocutory judgment (one paper), Supreme Court, New York County, entered January 22, 2002, modified, on the law, (1) to delete the portion of paragraph 4 that stays enforcement of the permanent injunction granted therein, (2) to delete paragraph 5 in its entirety and to substitute therefor a provision granting plaintiff recovery of defendant in the

amount of $35,750, with interest from November 1, 1999, and further directing that all funds deposited into escrow pursuant to the interim agreement between the parties, and all interest earned on such funds, be disbursed to plaintiff or its attorney forthwith, (3) to delete in its entirety paragraph 8, declaring that the joint consent of the parties is required for use of the subject party wall for advertising purposes, (4) to grant plaintiff summary judgment dismissing defendant's affirmative defenses, (5) to provide that the denial of defendant's cross motion for summary judgment dismissing plaintiff's first and second causes of action is with prejudice, and (6) to sever plaintiff's first and second causes of action, and except as so modified, the order and interlocutory judgment (one paper) otherwise affirmed, without costs.